ABBOT, Trustee, etc., Plaintiff in error, vs. TOLLIVER, Defendant in error.

*February 2 — February 28, 1888.*

*Excessive damages: Personal injuries: Unchastity.*

1. The railroad car in which the plaintiff was riding was derailed, and she was thrown upon the floor and, while attempting to rise, was again thrown backwards in a sitting position. She was a large woman, weighing about 200 pounds. The evidence tended to show that she was rendered unconscious for a long time; that for several months she was quite helpless, could not be moved without mak-

ing her scream, and had frequent fainting spells; that she suffered from pain in her spine and womb, and at times from pain and numbness in her left arm and limb; and that up to the time of the trial, about thirteen months after the accident, she had been confined to her bed most of the time. The physicians who examined her found a displacement and laceration of the womb, but agreed that these were not caused by the shock or fall in the car. It did not satisfactorily appear that there was any permanent injury to the spine. There was evidence that the plaintiff was of unchaste character. *Held*, that a verdict awarding $7,000 should have been set aside on the ground that the damages were excessive.

2. The fact that the plaintiff is of unchaste character may be considered by the jury in assessing compensatory damages for personal injuries caused by negligence.

ERROR to the Circuit Court for *Winnebago* County.

The action was brought against *Edwin H. Abbot* and John A. Stewart, as trustees of the Wisconsin Central Railroad Company, to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of the negligence of the said trustees and their servants in the construction, maintenance, and care of the railroad and its equipments. The facts will sufficiently appear from the opinion. The trial took place in May, 1887. The plaintiff had a verdict for $7,000. The defendant *Abbot* sued out a writ of error to review the judgment entered thereon.

For the plaintiff in error there was a brief by *Charles W. Felker*, and oral argument by *Mr. Felker* and *D. S. Wegg*. In the following cases, where the injuries received were much more severe, the probable injury much more certain, the capacity to earn much greater, and the pecuniary loss growing out of the disability to attend to business far more apparent, it has been held that a less amount of damages was excessive: *Baker v. Madison*, 62 Wis. 137; *Goodno v. Oshkosh*, 28 id. 300; *Sioux City & P. R. Co. v. Finlayson*, 18 Am. & Eng. R. Cas. 68, 76; *McIntyre v. N. Y. C. R. Co.* 47 Barb. 515; *Chicago & R. I. R. Co. v. McKean*, 40 Ill. 218, 238, 242; *Chicago, R. I. & P. R. Co.*

*v. McAra*, 52 id. 296; *Chicago, R. I. & P. R. Co. v. McKittrick*, 78 id. 619; *Spicer v. C. & N. W. R. Co.* 29 Wis. 580; *Murray v. H. R. R. Co.* 47 Barb. 196, 204.

For the defendant in error there was a brief by *Gabe Bouck*, attorney, and *Geo. P. Rossman*, of counsel, and oral argument by *Mr. Bouck.* To the point that the damages were not excessive, they cited *Groves v. Rochester*, 39 Hun, 5; *International & G. N. R. Co. v. Gilbert*, 64 Tex. 536; *Cummings v. Nat. F. Co.* 60 Wis. 617; *Draper v. Baker*, 61 id. 450; *Funston v. C., R. I. & P. R. Co.* 61 Iowa, 452; *Harrold v. N. Y. Ele. R. Co.* 24 Hun, 184; *Ferguson v. W. C. R. Co.* 63 Wis. 145; 3 Suth. on Dam. 289; *Johnson v. C. & N. W. R. Co.* 64 Wis. 425.

COLE, C. J. Some objections are taken to the rulings of the circuit court in admitting or excluding evidence on the trial, but as we have concluded that the judgment must be reversed on another ground it is not necessary to determine whether these rulings were erroneous or not. Whether the court erred in not permitting the witness Jones to testify to the matters concerning which he was interrogated, depended upon the fact whether Jones was the plaintiff's husband or not. The plaintiff testified on the trial that she was never married to him, though she had stated in her deposition previously taken that she was married to Jones after she was divorced from Miller. Jones was called by the defendant, and testified that he was married to the plaintiff in 1877, at Hancock, Wisconsin, by a justice of the peace by the name of Moore, and the justice himself testified that he performed the marriage ceremony between Jones and the plaintiff on the 25th or 26th of February, 1877, at the town of Hancock, where he then lived and held the office of justice of the peace. On this state of the evidence there was good ground for holding that Jones was not a competent witness. The defendant ought not to dis-

credit his own witness, but assume that he told the truth in the matter.   This is the only remark we feel called upon to make upon this point.

The plaintiff was injured while traveling as a passenger on the Wisconsin Central Railway, in April, 1886, between Dorchester and Stetsonville.   The parlor car in which she was riding got partially off the track, made a lurch, and threw the plaintiff, as she was rising from her chair, down on the floor in the center of the car; and while she was attempting to rise she was again thrown backwards in a sitting position.   The accident doubtless happened in consequence of the track being in a defective state; the ties were badly decayed, and this caused the rail to spread and the car getting off the track or becoming derailed.   The negligence of the defendant in failing to keep the road-bed in a reasonably safe condition is not seriously denied, nor could it well be upon the proofs.   The plaintiff was rendered unconscious by the fall, and had no recollection of anything which occurred on her journey home to Ashland. She was entirely helpless, and says it was quite a number of days before she became conscious, and when she did she could not even move her fingers without crying out.   Her left arm and limb were numb; "she was in sinking spells most of the time, and was in pain all over," as she describes her condition.   She suffered from pain in her spine and womb.   Dr. Hosmer, who was called to attend her the night she reached home, says she complained of her womb, and he found she was sore up and down the back; he saw no black and blue spots on her body anywhere, but her spine was sensitive or tender.   When he made an examination, as he did some weeks after the accident, he found a displacement and laceration of the womb, and he thought there was more or less concussion of the spinal column. He says she was troubled with fainting spells, something like epileptic fits.   He attended upon her for some months.

At times, he says, she got along very well, and was recovering, but a little indiscretion on her part, in attempting to sit up, would bring her back just as she was at first. Dr. Madden also called to see the plaintiff, in consultation with Dr. Hosmer, three or four days after she was injured, and he saw her several times afterwards. He made an examination, and found a soreness or tenderness along the spinal column, and an enlargement and laceration of the womb. He agreed with Dr. Hosmer as to her condition, but thought she was suffering from no organic trouble except the displacement or inflammation of the womb. He discovered no symptoms of any organic disease of the spine, except the statements of the plaintiff. The nurses who had the care of the plaintiff for several months say she complained of pain, was quite helpless, could not be moved without making her scream, and that she had frequent fainting spells. The plaintiff says she has not walked nor stood upon her feet since the injury, and that at times she suffered from pain and numbness in her left arm and limb. It appears that she has been confined to her bed most of the time up to the trial, and has suffered considerable pain. The jury gave a verdict for $7,000 damages, which, it is claimed on the part of the defendant below, is disproportionate to any injury proven, and should be set aside as excessive. We are inclined to sustain this position as sound.

We have stated the material testimony given on the part of the plaintiff as to the nature and extent of her injury. To our minds it fails to show that she sustained any permanent injury by the fall. She is a large woman, weighing about 200 pounds, and doubtless received a severe shock or jar when thrown upon the floor of the car. But the medical testimony offered on her side does not satisfactorily show that she suffered any permanent injury to the spine by the fall. The probability that she did sustain any such injury is greatly weakened, if not fully disproved, by the

medical testimony given on the part of the defendant. These physicians were of the opinion that, if there had been any concussion of the spine, there would be some indications of paralysis resulting from it, and none such was shown.    They thought all the real pain which the plaintiff suffered was caused by the disease and laceration of the womb; and all the physicians agreed that this womb difficulty was not produced by the shock or fall in the car.   Dr. Hosmer says the plaintiff was getting better of her nervous symptoms, and Dr. Madden thought there was probably no organic trouble of the nervous system.    The physicians on the part of the defense were of the opinion that her pains were largely imaginary or feigned.    But the evidence is so unsatisfactory and inconclusive as to whether there was any injury to the spine resulting from the fall, that it does not warrant giving damages on that ground; for, unless we are prepared to say that the whole matter of damages, in a case of personal injury by a railroad company, rests entirely in the judgment and discretion of the jury, it is obvious there should be some basis for damages in the proof offered. The learned circuit judge charged the jury that if they found the plaintiff had an injury to or disease of the womb prior to the accident, they ought to take into consideration the nature and extent of that injury or disease, and whether any or all the pains which she claims to have suffered proceeded from, or were caused by, this injury or disease of the womb.    If so, the plaintiff was not entitled to recover damages for such pain and suffering.    Notwithstanding this direction, we are unable to account for the verdict, except upon the theory that damages were actually given for a supposed permanent injury or disability of the spine, of which there was no satisfactory proof.   We have, in a number of cases, set aside verdicts where the damages awarded exceeded all fair compensation for injuries proven. In the present case we think the jury must have been mis-

Abbot, Trustee, etc. vs. Tolliver.

led, or were influenced by some improper bias, in giving so large a verdict, which is quite disproportionate to any injury proven.

The judge likewise charged that the defendant, if liable, was liable for all the direct injuries resulting from its negligent acts; that the fact that the plaintiff is an unchaste woman, or has more than one husband, has nothing to do with the damages, if any, she is entitled to recover for injuries received; that an unchaste woman, or a woman who has several husbands, if injured on a railroad train, is entitled to recover the same damages for injuries received as a chaste woman, or a woman who has only one husband. This charge was excepted to, and we think it had a tendency to mislead the jury on the question of damages. We do not wish to intimate that an unchaste woman who is maimed and disabled by an accident on the railroad may not suffer as much pain of body or anxiety of mind as a virtuous woman would from a like injury; but still, when it comes to a question of awarding damages, it may be that a jury would not give — perhaps ought not to give — the *same damages* for injuries to an unchaste woman that they would allow a virtuous, intelligent, and industrious woman, who could command good wages or take care of a family. The fact of chastity, as well as other personal virtues and business qualifications, would be proper matters for a jury to consider in making up their verdict as to what damages should be given as a compensation for the injury received, in view of all the facts.

We think the court erred in refusing a new trial on the ground that the damages were excessive. For this reason the judgment of the circuit court is reversed and a new trial awarded.

*By the Court.*— Ordered accordingly.

See note to this case in 36 N. W. Rep. 622.— REP.